Good morning, Your Honor. Good morning. Ruben Sarkissian for Petitioner Diploshyan. Counsel, could you raise your voice a little bit and speak into the microphone? Yes, sir. Ruben Sarkissian for Petitioner Diploshyan. Your Honors, I believe there's just about three points to touch on. I'll go into detail should the Court so desire. But the issues that we have are past persecution, the issue of undermining by the return of the petitioner to the country of persecution, and the recent case of Xi impacting the issue of corroboration. With respect to past persecution, Your Honors, I would argue that even if the Board failed to see any of the individual episodes of mistreatment as rising to the level of persecution in cumulation, I believe we have, the Board should have found there to be persecution against the petitioner. With respect to the issue raised by the government that the petitioner undermined his claim by returning to the country of the claimed persecution, I would respectfully argue that once again, the events that occurred following his return to the country of alleged raised his experiences to the point where he could not make a claim of persecution. And in support of that, by analogy, we offered the Court the cases involving changed country conditions where something triggers. Counsel, before you go further, would you concede then if there had been no events occurring after he returned to the country, his return to the country would negate his claim for asylum? Your Honor, possibly, but the reason he, as the testimony indicated, he returned to the country for reasons of desperation of family members being in danger. But the reason isn't necessarily determinative. What happened to him when he was there, if he went back to the country and did not suffer any untoward events, that would militate toward a finding that there is no fear of future persecution, wouldn't it? Had there been no untoward events, yes, Your Honor. What happened there upon his Well, to the best of my recollection, Your Honor, there was a episode of detention, beating, but worse than the detention and the beating was that, was the basically promise made to him that any further activity on his part would lead to the destruction of him and his family and or at a minimum, or at a minimum prosecution based on the statement that he was forced to sign that he had engaged in hooliganism and beating of a police officer. Just so I understand, are you saying that these events took place after his return? Yes, Your Honor. Okay. Yes, Your Honor. Now, Mr. Larkisian, as to the severity of the persecution, what do we do with the case of Prasad v. INS where the applicant was taken to a police station, placed in jail for four to six hours, interrogated about political allegiances and hit in the stomach and kicked from behind. He was beaten, too, and the BIA found that that wasn't persecution and we affirmed. Now, is this case just almost on all fours with that case? It is. There is, there are similarities, Your Honor. I would merely submit that this, the episode involving the beating of the, the last episode was, was the third time this had happened to him and there was threats against his family and of, and of, of, as well as the, the strong possibility of legal, legal prosecution. This was the third time he was detained and beaten by the police? I, I don't see any of that. No, Your Honor. He was, he was, he was beaten on two prior occasions and on... No, no. He, he cut his hand at a protest on the, on the, on the wire when he was shoved into the wire in 2005. But tell me where he was detained and beaten by the police on two prior occasions? Your Honor, he was beaten, sorry, I can't find the, there was a beating, Your Honor, forgive me. I'm, I'm, I'm, one second, please, Your Honor. The, the BIA decision says in 2006 he was, he alleged, alleged that he was detained and beaten. Your Honor, there's an episode, Your Honors, there's an episode in which in April, on April 12th, 2004, he's thrown against a fence, his hand is cut, that's the, where he suffers the injury. There was... But that's, but that's not detention and a beating, though. No, Your Honor. No, Your Honor. And, and then there was the, but there was also the destruction of his business and the threats made to him by way of his employee who was beaten and used as an example, and the message sent through the, the beaten employee that this is going to happen to you if you continue to meddle. I think that, that's, that's, that is also an episode to, for the court to consider. So the, the, the BIA found that your client's return to Armenia, when several incidents of alleged persecution had already transpired, significantly undermined his claim of a well-founded fear of future persecution. What do you say to that? Thank you, Judge. I, I think there's a bit of a bootstrapping there in, in the BIA's position. On the one hand, they're saying there isn't anything there there with respect to the episodes prior to his first trip to the United States, and then they're saying, well, by returning, he's undermined it. That would be, that would be my response to Your Honor's question, that, that, that they can't have it both ways in that sense, Your Honor. What about the BIA's observation that there has been no evidence of threats of harm against the petitioner's spouse? What's your response to that? Well, Your Honor, if, if they, if the, you know, given that the BIA said credibility is, is not an issue, he's, he's in his testimony. He talked about, well, at least the wife being visited by the police, Your Honor, before her change of address and moving to another location. However, he doesn't, he's, even there, had there been nothing with respect to any loved ones, that's not a requisite for him to have a claim of persecution, of, of personally being persecuted, Your Honor. Did you want to save some time for rebuttal, perhaps? Yes, Judge, thank you very much. All right, thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Drew Brinkman on behalf of the Attorney General. Mr. Diplosian is a native and citizen of Armenia who overstayed his visa and applied for asylum. The immigration judge found, denied his claim on three alternate grounds. He was not credible, he failed to corroborate his claim, and he failed to show past persecution or a well-founded fear of future persecution. Let me ask you this. One of the issues was his failure to provide corroboration for some of his claims. Did the immigration judge request corroboration and give him an opportunity to provide it? No. No, he, no, the immigration judge did not do that because at the time, I didn't think so, the law seemed to be that that was not required, that notice and opportunity. Well, this was after the Real ID Act, right? Right. And even if he's found to be credible on the Real ID Act, corroboration can be required. That's right. But here, there was no requirement of corroboration by the IJ. Well, at the time, Ashodi, there was a case called Ashodi in this court that said that there was no notice and opportunity required before denying a claim for a lack of corroboration. And that's what the immigration judge cited, didn't give him notice and opportunity to respond. If he had exhausted a claim that he wasn't given an opportunity to provide corroboration to the board, we would probably concede error on that point that the immigration judge was required to do that. But counsel, the BIA did not proceed on an adverse credibility determination. So why does it matter? The BIA assumed that everything the petitioner said was true. So doesn't that cure any deficiency on the part of the IJ in terms of making an adverse credibility determination? The credibility determination is, you're right, there is no adverse credibility determination now. It still could be raised if it goes back down. But as it comes here, the board assumed credibility, but still denied for lack of corroboration and then denied for lack of past persecution and well-founded fear. So if we assume that the failure to give an opportunity to address any lack of corroboration, do we have to remand for that? No, because the, we have, I mean, I made an exhaustion argument in the brief, but if you get past that and assume that was error, that's what you're asking. Yes. The past persecution finding and well-founded fear finding are independent of the corroboration finding. So you wouldn't have to remand. Now, this man in 2006 went to the police station. He was detained for 30 minutes and he was beaten by the police. Isn't that persecution? No, because he was, there's several cases where similar facts and the board said that's not sufficient to rise to the level of persecution. We cited, you mentioned Prasad. We cited Gu in our brief. I think we cited Kumar. Similar short detentions with beating, but no severe injuries, and that's not sufficient to rise to the level of persecution. What about opposing counsel's recitation of the events that occurred when the petitioner returned to his home country? Why isn't that sufficient evidence of a well-founded fear of future persecution? Well, the board pointed out several factors that suggest that he's no longer at risk of being harmed. For one, they released him. I mean, if they really wanted to harm him, it's unclear why they would have released him. His wife and children remain in Armenia to this day. They're not being harmed. But he said that his wife had to relocate and that she was visited. What's your response to that? He was visited, but no harm came to her. And that was back in 2007. So we're now almost 10 years past that. And in the brief, he suggests that his wife and children's safety isn't really relevant because they're not similarly situated to him. But he claimed that the police actually arrested his daughter to get to him. So the fact that they haven't gone after his family members since that time does suggest that the police are no longer interested in him. He said that he really no longer supports this political party, the National Unity Party. He said that that party is really no longer active in Armenia. So it's unclear why the government would be interested in harming him for supporting that party. And while the board didn't mention the State Department reports, I looked through it. I don't see anything about political repression of National Unity Party members. And the State Department report actually says that the Armenian government is trying to combat human trafficking. And one of the claims he made was that he was involved in combating human trafficking, so the government came after him. All those factors, I think, support the finding that there is no well-founded fear of future persecution in this case. Unless you want to talk about the corroboration issue further, I think that's really all I wanted to say. I would like you to cite me a case that says that there is no duty on the IJ to request corroboration and give the petitioner an opportunity to provide it. I'm conceding that that is now the law of the circuit. That is required. That is, but it wasn't then? It wasn't then, yeah. It's kind of strange. In Wren v. Holder, the court said that it required notice and opportunity. The IJ is required to give notice and opportunity. Well, shouldn't we apply the law that obtains now? If he had exhausted it, yes, I would say that there was error here. But he didn't raise this argument to the board. It's the only defense I'm making to that corroboration finding. So he's now saying he was required to get notice and opportunity. Well, if the law has changed in the circuit, does he have to exhaust it? We think so. When did the law change? So Wren came out first, then Ashode said the Wren was dicta. Then you had the IJ decision, the board decision, our briefing. And then you had Xi, I think is the name of the case, is the most recent, where they said Wren is still good law. So that was after all this happened, 2014 or 15, I believe Xi was. But your point is that regardless whether it's exhausted or not, the corroboration issue, the fact is that the BIA made a determination of no political persecution, no past political persecution, no well-founded fear of future political persecution. And we should accept that. Right. I think the corroboration issue is a much tougher issue because of all these changes in law, and it's much easier to take the alternate findings, say substantial evidence supports, no past persecution, no well-founded fear. Thank you, counsel. Honours, just a couple of points. On the exhaustion issue, counsel who did the appeal at the BIA level, it may have been imperfect, but there was an attempt at exhaustion. And that was, I believe, on page 18 of the appellate's record, where he's referring to the scar on his hand and other issues. Are you saying that exhausted the issue of corroboration? They're making, I'm just saying that there was an attempt at the, there was an argument with respect to corroboration when the petitioner raised the issue of the scarring on his hand, Your Honour. So the particular issue that's been raised here is whether or not the IJ gave the petitioner notice that corroboration was required. The government says that particular issue was not exhausted. So where was that particular issue exhausted? Your Honour, I, I don't know, Judge, I don't know. All right. So when you cited the Gee case, that's part of your argument regarding the failure of the IJ to give notice that corroboration was required? Okay. All right. Please proceed. And the last, the last thing I wanted to mention, Your Honour, was the non-existence of the political party for which the petitioner suffered persecution isn't really relevant because in the testimony before the, in the initial testimony before the immigration court, there is, there's talk of a runoff in which case he gave his support to another person, another candidate who was part of a coalition. The, the significance of this person's political claim is in that he was opposed to the existing government, not so much which opposing party he belonged to. And I think, and I thank the court, Your Honour. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Fernandez, Rawlinson, Bea